# *EXHIBIT 5*



# PohlmanUSA®
## Court Reporting and Litigation Services

---

Kenny Golladay - Statement for the Record

December 3, 2020

---

Clarity Sports International, LLC, et al.

vs.

CAA Sports, et al.

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF PENNSYLVANIA


CLARITY SPORTS INTERNATIONAL, LLC,
and JASON BERNSTEIN,

        Plaintiffs,

   vs.               Case No. 1:19-cv-00305-YK

CAA SPORTS, et al.,

        Defendants.


Videoconference Statement for the Record



December 3, 2020
10:20 a.m.






Stephanie R. Dean, RPR

```
 1    REMOTE APPEARANCES:

 2       On behalf of the Plaintiffs:
                  JOHN D. COMERFORD, ESQ.
 3            Dowd Bennett LLP
              7733 Forsyth Boulevard, Suite 1900
 4            St. Louis, MO  63105
              314.889.7300
 5            jcomerford@dowdbennett.com

 6
          On behalf of Defendants MVP Authentics, LLC,
 7        Daryl Eisenhour, Jason Smith, Boone Enterprises,
          Inc., d/b/a Boone Enterprises Authentic
 8        Autographs and Craig Boone:
                  WILLIAM J. CLEMENTS, ESQ.
 9            MICHAEL A. IACONELLI, ESQ.
              Klehr Harrison Harvey Branzburg, LLP
10            1835 Market Street, 14th Floor
              Philadelphia, PA  19103
11            215.569.2700
              wclements@klehr.com
12            miaconelli@klehr.com

13
          On behalf of Defendants Redland Sports and Gerry
14        Ochs:
                  ILES COOPER, ESQ.
15            J.T. HERBER, ESQ.
              Williamson, Friedberg & Jones, LLC
16            10 Westwood Road
              Pottsville, PA  17901
17            570.622.5933

18
                        - - - - -
19
      ALSO PRESENT:
20            Jason Bernstein

21                      - - - - -

22

23

24

25
```

```
 1                     I N D E X

 2                       EXHIBITS

 3    Exhibit 1 - Notice                      4
      Exhibit 2 - Subpoena                    4
 4    Exhibit 3 - Process Server information   4

 5
                        - - - -
 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              P R O C E E D I N G S - (Remote)
 2                      - - - - -
 3        MR. COMERFORD:  This is John Comerford
 4   representing Plaintiffs Clarity Sports
 5   International, LLC and Jason Bernstein.  The time
 6   is 10:21 Eastern time on December 3rd.  We are here
 7   for a videotaped deposition of third-party witness
 8   Kenny Golladay, who is a wide receiver in the
 9   National Football League.  Mr. Golladay was served
10   with a subpoena and has not shown up yet for the
11   deposition, so I'd like to enter a few exhibits,
12   and I can share my screen.
13   (Thereupon, Exhibits 1 through 3 were marked for
14   purposes of identification.)
15        MR. COMERFORD:  So Exhibit 1 is the Notice
16   of Subpoena to Mr. Golladay dated November 2nd
17   2020.  That will be Exhibit 1.  Exhibit 2 is the
18   subpoena to Mr. Golladay, 92 pages, and it says
19   that the deposition will be conducted by video
20   conference, and we did that because of the COVID-19
21   pandemic and the travel restrictions and social
22   distancing requirements.  The date and time is
23   December 3, 2020 at 10:00 a.m. Eastern time, and it
24   says the deposition will be recorded by stenography
25   and video, and it's dated November 2nd.
```

1          Exhibit 3 is the return that we got from
2    the process server.  His name is Robert Lutren,
3    L-u-t-r-e-n.  And Mr. Lutren served Mr. Golladay on
4    November 3rd 2020.  Mr. Lutren writes:  I served
5    the subpoena by delivering a copy to the named
6    individual as follows, by corporate counsel, Jay
7    Colvin, lawyer for Detroit Lions organization as
8    agent authorized due to COVID, new procedure, see
9    attached letter on November 5th 2020, 12:01, p.m.,
10   and that's signed by Mr. Lutren.  And then under
11   Additional Information, Mr. Lutren writes:
12   Informed if I go near Mr. Golladay, he would be
13   forced to go into quarantine.  And then the fourth
14   page of Exhibit 3 is a letter dated Thursday,
15   November 5, 2020, which reads:  On Thursday,
16   November 5, 2020, I, Kenneth Golladay, authorize
17   Jay Colvin to accept and receive service of process
18   on my behalf, signed Kenneth Golladay.  That's
19   Exhibit 3.
20          So I subsequently had a phone conversation
21   with Mr. Colvin in which he informed me that he had
22   received a subpoena, that he would speak with
23   Mr. Golladay about it.  Mr. Colvin stated that he
24   would like to coordinate Mr. Golladay's appearance
25   with Mr. Golladay's agent.  I told him the agent

1  was Todd France.  Mr. Colvin then said:  Well, can
2  I have the contact information for Mr. France's
3  attorneys, and I provided that information to
4  Mr. Colvin by email.  Mr. Colvin emailed me
5  subsequently and stated that he had left a message
6  for William Clements.
7         At this time I would ask Mr. Clements to
8  explain his --
9         MR. COOPER:  Can we get the emails that
10  you're referring to?
11        MR. COMERFORD:  I do.  I'm not going to
12  enter them as exhibits, but we'll make them
13  available after -- if Mr. Golladay doesn't show up
14  today, which appears to be the case, we'll make
15  those available.
16        MR. COOPER:  Why can't we get them today?
17        MR. COMERFORD:  You can have them today.
18  I'll send them to you.
19        Mr. Clements, could you explain what
20  Mr. Colvin said to you, please?
21        MR. CLEMENTS:  What's the point of it?
22  What does it matter?  I already told you, but I'll
23  put it on the record.  I didn't talk to him.  It's
24  true, Mr. Colvin, who I got a voice message -- I
25  can't remember when.  It was subsequent to -- well,

1    first, let me say this:  We did receive the

2    subpoena for Golladay.  I'm not aware that anybody

3    filed any objections to the subpoena.  We did

4    receive from Mr. Comerford -- an email from

5    Mr. Comerford, something to the effect they were

6    able to serve Mr. Golladay.  I haven't seen these

7    documents you're putting in as exhibits.  It

8    doesn't really matter.  So we were anticipating

9    that this deposition was going to take place today.

10   We want to participate in the deposition, but it's

11   not our deposition.  I did, I think, after all this

12   receive some call from someone from the Detroit

13   Lions.  I referred that call -- I didn't call them

14   back, I referred that call to my co-counsel,

15   Mr. Iaconelli, and my understanding of whatever the

16   call was was basically what Mr. Comerford just

17   said, that Mr. Colvin had accepted service on

18   behalf of Mr. Golladay.  Fine.  That's not our

19   issue.  There really wasn't any talk about

20   coordinating a deposition, nor would I do that

21   because it's not my deposition to coordinate, so

22   that was it.  I don't remember anything being

23   talked about about Todd France or that being

24   communicated to me.

25           So at this point it's 10:30, we're not

1    sure whether the witness is going to show up.  I

2    always had some practical doubts as to whether the

3    witness is going to show up for a deposition on

4    Thursday before a Sunday NFL game, because

5    typically Thursday is the most important practice.

6    So my suggestion is at this point Mr. Comerford put

7    what he wanted into the record.  I assume he wants

8    to do that because he's going to try to enforce the

9    subpoena against Mr. Golladay.  Again, that's not

10   our issue, that's between him and Mr. Golladay.

11   And I would suggest that we adjourn, with the

12   understanding that if Mr. Golladay calls in to the

13   court reporter, they can stay online, if you want

14   to pay them, we'll be contacted, and then we'll

15   proceed from there.  And if he doesn't, you're

16   going to have to go to the courts with the subpoena

17   or we'll reschedule this some other time.  I don't

18   think anybody wants to stay on this video call, you

19   know, and bill our clients until there's actually

20   something to do.  I, myself, am going to exit this

21   and then I'll trust that everybody will have their

22   ethics in place to contact me if the deposition is

23   starting up again.

24           MR. COMERFORD:  So before you leave,

25   Mr. Clements, I would ask Mr. Iaconelli to

```
 1   please --

 2           MR. CLEMENTS:  We're not saying anything,

 3   John.  I just told you so that's it.  Mr. Iaconelli

 4   is -- none of us are under oath.  It doesn't matter

 5   what Mr. Colvin said.  The only thing that

 6   Mr. Colvin -- that matters with Mr. Colvin is that

 7   he said he accepted the subpoena for Golladay.  We

 8   have zero obligation to coordinate your third-party

 9   deposition, just like you have zero obligation to

10   coordinate our third-party depositions.  I would

11   have assumed that you had your ducks in a row.

12   We're ready.  Everybody is here.  We prepared for

13   it.  I already spent time that I'm never going to

14   be able to get back.  This is not my problem.  It's

15   not Mr. Iaconelli's problem, it's not Mr. Cooper's

16   problem, and it's not Mr. Herber's problem.  So,

17   no, we put it on the record and that's it.  You're

18   not questioning us, okay?  If you want to go

19   enforce the Golladay subpoena, go enforce the

20   Golladay subpoena.

21           MR. COMERFORD:  I'm asking that

22   Mr. Iaconelli please explain his communications

23   with Mr. Colvin.

24           MR. CLEMENTS:  You can ask him.  He's on

25   the call.  If he wants to explain it, he can
```

1   explain it.  We have no obligation to explain

2   anything to you.  What is your point?  What is your

3   point, Mr. Comerford?  Are you making an accusation

4   against me and my law firm and my co-counsel?  If

5   you are, put it on the record so I can bring it to

6   the attention of the judge.  Put your accusation on

7   the record.

8          MR. COMERFORD:  I'm going to say something

9   and I would like to be able to say it without being

10  interrupted.  What I want to say is this:  I am

11  requesting that Mr. Iaconelli describe on the

12  record his communications with Jay Colvin about

13  this deposition.

14         MR. CLEMENTS:  I will say, Mr. Iaconelli,

15  if you're there, if you want to do it, or did I

16  adequately sum up the conversation?  Is he even

17  here?

18         MR. COMERFORD:  The Zoom application that

19  we're using indicates that Mr. Iaconelli is on the

20  line but muted, and you previously said, I believe,

21  Bill, that Mr. Iaconelli is on the line.

22         MR. CLEMENTS:  John, you're very

23  prosecutory.  You should come with the Fifth

24  Amendment, anything you say can and will be used

25  against you.  I am sitting in my dining room in the

1    suburbs of Philadelphia.  Mr. Iaconelli is in New

2    Jersey.  I have no idea if he's on the line or not.

3    I mean, I'm seeing the same thing on Zoom as you,

4    I'm seeing a blank screen.  I don't see any video

5    for him.

6             MR. COMERFORD:  I see a screen that says

7    M. Iaconelli.

8             MR. CLEMENTS:  Yeah, I see the same thing

9    as you.

10            MR. COMERFORD:  So I'm asking

11   Mr. Iaconelli to speak up --

12            MR. CLEMENTS:  Let's go off the record a

13   minute.  I have to take this call.  Off the record.

14                  (Short recess.)

15            MR. CLEMENTS:  Sorry about that.  Two

16   things -- well, one thing.  The other was from my

17   other case.  Can everybody hear me?

18            MR. COMERFORD:  Yes.

19            MR. CLEMENTS:  Because it's somewhat

20   uncharacteristic for Michael not to speak when

21   we're talking on the record when we ask him, I

22   called him up.  He's having some -- he can hear us,

23   but he's having difficulty with the audio, so I

24   don't know what the issue is.

25            MR. COMERFORD:  Let's go back on the

1    record, please.

2          THE REPORTER:  We are on the record.

3          MR. CLEMENTS:  We are on the record.  He's

4    having difficulty with the audio, so I don't know

5    what -- if you want to call him up and ask him,

6    fine, if you want to talk to Colvin, but basically

7    he was listening, he said that's about the gist of

8    it, which is all I know, I wasn't on the call, and,

9    you know, Colvin discussed service, he wanted to

10   know if we were aware of the deposition, which we

11   were, because, like I said, we got the subpoena and

12   the email from Mr. Comerford that it was served,

13   and, you know, he said that he had several --

14   however many emails and communications with

15   Mr. Comerford about the Golladay deposition, so --

16   again, I don't know what the relevancy of any of

17   this is.  It seems like what your issue is is

18   you've got to enforce that subpoena against the

19   third-party or get the third-party to show up.  The

20   more pressing issue, I think, for all of us is how

21   long are we going to be doing this?  It's already

22   been 40 minutes and we've basically accomplished

23   zero here.

24         MR. COMERFORD:  Can Pohlman record video

25   of the gallery view of the participants?

 1            MR. CLEMENTS:  And what's the point, John?

 2            MR. COMERFORD:  That's not a question for

 3     you, Mr. Clements.

 4            MR. CLEMENTS:  I will stipulate that

 5     Mr. Iaconelli is -- he's on there.  He just says he

 6     has technical difficulty.  Why don't you walk him

 7     through -- I don't know what he's doing.  If I

 8     click on the -- I mean, all I know is there's a

 9     blue box mute and unmute.  It works for me.

10            MR. COMERFORD:  There's a dial-in.  If

11     your computer doesn't work, there's a dial-in where

12     you can call in by phone.  The number is

13     1-877-853-5257, and then the pass code is 656493.

14     The meeting ID, if you need it, is 93441466647.  So

15     I would ask Mr. Iaconelli to dial in by telephone.

16            MR. COOPER:  John, this is Iles --

17            MR. CLEMENTS:  What are you going to do?

18     Are you going to use your special prosecutorial

19     powers to throw him in jail?  I mean, what's the

20     difference?  We're wasting all our time.  You

21     understand this is just a lawsuit over a tortious

22     interference claim?  You also understand that

23     sometimes third-party witnesses don't show up.

24     Whatever conversations that anybody has -- Colvin,

25     he didn't say he represented Golladay and we don't

1    represent Golladay, so what's the difference?  I

2    mean, what are you asking about?  It's like, you

3    know, go get the third party to show up.  It

4    happens quite frequently.  I don't know how long

5    you've been litigating, but third parties don't

6    show up.  Usually, though, the attorney that's

7    noticing the deposition has the common sense and

8    courtesy to tell everybody before, if they haven't

9    heard from the witness, that the deposition is not

10   going to take place so we're not wasting our time

11   like we are here.  And, if anything, you owe me an

12   hour.  You.  You and your firm and your client owe

13   me whatever my billable rate is this hour for

14   wasting my time.

15          MR. COMERFORD:  I sent Mr. Iaconelli the

16   telephone dial-in information.  Hopefully that can

17   fix his audio issues.

18          MR. COOPER:  John, what's the purpose of

19   all this?

20          MR. CLEMENTS:  Who knows?

21          MR. COMERFORD:  I'm trying to make a

22   record of what transpired in the days before this

23   deposition.

24          MR. COOPER:  Respectfully, John, that has

25   nothing to do with this deposition.

```
 1            MR. CLEMENTS:  It has nothing to do with
 2    the case.  If you want to make an accusation, make
 3    an accusation.  If you want to go to court like
 4    Rudy Giuliani and tell the judge that we're doing
 5    something, go ahead, Mr. Comerford, okay?  It's
 6    like you're really over-litigating this case.  It's
 7    like everything with you is if you don't get what
 8    you want exactly when you want it, you cry about it
 9    and it's like some sort of conspiracy.  I've
10    never -- if someone would have told me I was still
11    litigating this after that NFLPA arbitration, I
12    would tell them they were nuts.  It's like your
13    client must have an unlimited budget for this stuff
14    or something.
15            MR. COOPER:  John, why don't you just call
16    Colvin and ask him if Golladay is going to show?
17            MR. COMERFORD:  I sent an email to him.
18            MR. COOPER:  And what's the response?
19            MR. COMERFORD:  There has been no
20    response.
21            MR. CLEMENTS:  Then why don't you have him
22    come on and put on the record what he did?  I mean,
23    he's the guy you're dealing with, it's not us.  We
24    have nothing to do with it.  We're a third party.
25    You told me to come to a deposition, I'm at a
```

1    deposition, for a third-party deposition.

2         MR. COOPER:  John, is there any reason not

3    to shut this down now?

4         MR. CLEMENTS:  At some point I think I'm

5    going to call the judge, you know, about this

6    because this is really getting to be -- maybe we

7    should because this is really getting to be

8    ridiculous.

9         MR. COMERFORD:  I would welcome that.

10         MR. CLEMENTS:  Go ahead, dial it.  Go

11    ahead, call her.

12         MR. COMERFORD:  You said you were going to

13    call the judge and I said I welcome that.

14         MR. CLEMENTS:  I'm not going to look for

15    the number, but go ahead and call and maybe we can

16    resolve this, otherwise, we're going to be sitting

17    here all day.

18         MR. COOPER:  John, do you consider we're

19    at a deposition?  Is that the status we're at?

20         MR. CLEMENTS:  To cross-examine all

21    counsel.

22         MR. COOPER:  I'm asking John.  Are we in

23    the middle of a deposition, John?

24         MR. COMERFORD:  We're on the record and

25    we're waiting for the witness to arrive, and I'm

1    trying to make a record of what we've done to try

2    to get the witness here, and I'm also trying to

3    make a record that counsel for CAA Sports and two

4    of the three memorabilia dealer defendants had

5    contact with the person who accepted service, and I

6    think that that should be explained.

7            MR. CLEMENTS:  We already explained it to

8    you.  And, number two, if your accusation is that

9    we're somehow blocking or preventing or told

10   Golladay not to show up, that's incorrect, we did

11   not.  We're here ready for this deposition.  If

12   that's what your allegation is, if that's what

13   you're attempting to prove, you're never going to

14   be able to prove it, okay?  If you're trying to say

15   legally, Mr. Comerford, that we have some

16   obligation to affirmatively go out and procure the

17   attendance of a third-party witness that you

18   subpoenaed and arrange for the deposition, that's

19   not correct.  It's your deposition.  You organized

20   it with the court reporter, you served the guy,

21   you're saying.  It's your obligation to make sure

22   the witness is here, and you're being an

23   obstructionist right now by keeping this deposition

24   open unless you can tell us for sure that the

25   witness is going to show up.  Or as was my

```
 1    suggestion is that we just simply go off the

 2    record, have the court reporter wait, it's on your

 3    dime, and if Mr. Golladay calls back in, she can

 4    contact all of us and we can hop right back on.

 5    I'm going to be sitting right in this very spot

 6    working all day.  I assume Mr. Cooper and

 7    Mr. Herber will be doing the same thing.  What

 8    Mr. Iaconelli is doing, I don't know.  I was

 9    planning on attending this deposition.  I didn't

10    even know he was going to be on the deposition,

11    just like I'm planning on doing Bernstein's

12    tomorrow, so what are we doing here?

13          MR. COMERFORD:  I'm asking one more time

14    for Mr. Iaconelli to speak up.  He is attending

15    this deposition by video, as indicated in this Zoom

16    application.  He has the telephone dial-in

17    information if his computer audio is not working.

18    I'm asking Mr. Iaconelli to explain his

19    communications with Jay Colvin about this

20    deposition.

21          MR. COOPER:  John, you haven't explained

22    yours.  I don't know that you're obligated to.  The

23    idea that we should conduct an inquisition -- I

24    guess we'll get around to asking the court reporter

25    what she did or did not do.  This is insane.  You
```

1   subpoenaed a witness.  The party you went through

2   has obviously failed to do his part, if you

3   expected Mr. Colvin is it, to produce the witness.

4   We've don't have Colvin.  We don't have the

5   witness.  What are we doing here?

6          MR. COMERFORD:  Well, we have

7   acknowledgement from Mr. Clements that

8   Mr. Iaconelli had conversations with Mr. Colvin

9   about this deposition and I would like

10  Mr. Iaconelli to state the content of that

11  conversation.  I've done that with respect to my

12  communications with Mr. Colvin and I would like

13  Mr. Iaconelli to do the same.

14         MR. COOPER:  Why has Colvin become the new

15  center of the memorabilia case?  Is he a

16  memorabilia dealer, too?  Do we have pictures of

17  him and Todd France and Jake Silver and Jimmy

18  Martin?  Did we ever find out who was in those

19  wedding pictures, by the way?  Those are cute.

20  Well, I'm getting off in two minutes.  It's 10:48

21  here.

22         MR. CLEMENTS:  We'll give it until 11.  I

23  don't know if he's hearing it now or what's going

24  on.  Who know?  These Internet things are -- all I

25  know is I'm never getting this hour of my life

1    back.

2              MR. COOPER:  I tried to avoid this problem

3    by inviting everybody to Pottsville, which is one

4    of the finest places on earth.

5              MR. CLEMENTS:  Let's go off the record

6    until something happens or doesn't happen, as the

7    case may be.

8                     (Short recess.)

9              MR. CLEMENTS:  I'm trying to figure out a

10   technical work around, and the best one I can

11   figure is apparently -- I don't know what's going

12   on, but I'm going to call Mr. Iaconelli and have

13   him on the speakerphone and hopefully we'll be able

14   to communicate and get this over with, all right?

15   Is everybody back?

16             MR. COMERFORD:  This is John Comerford,

17   I'm here.

18             MR. CLEMENTS:  Iles, J.T.?

19             MR. COOPER:  Present.

20             MR. IACONELLI:  Hello.

21             MR. CLEMENTS:  Michael, I have you.  We're

22   on the record.  I just explained to them you're

23   having some technical problems, so hopefully

24   everybody will be able to hear.  We'll see here if

25   the court reporter can hear you.  Go ahead.

1          MR. IACONELLI:  Can the court reporter

2     hear me?

3          THE REPORTER:  Yes.

4          MR. IACONELLI:  I just want to make

5     certain that everyone received the email that I

6     sent a while ago, because I did log on through the

7     Pohlman service and I see people speaking through

8     the computer, but my computer will not allow me to

9     unmute so that I can speak, so I sent an email to

10    all of the lawyers to inform them of that.  I've

11    been listening to the accusations that

12    Mr. Comerford has been making, so go ahead, John,

13    ask your question and I'll respond as appropriate.

14         MR. COMERFORD:  My question,

15    Mr. Iaconelli, is can you describe the content of

16    your communications with Jay Colvin about

17    Mr. Golladay's deposition today?

18         MR. IACONELLI:  Okay.  Mr. Clements

19    already did that on the record, Mr. Comerford.

20    What else are you asking me as counsel to party

21    defendants in this case concerning a third-party

22    subpoena that you sent to a third party whom we do

23    not represent and whom I informed you last night

24    via email we have not communicated with?

25         MR. COMERFORD:  My question is:  Can you

1   tell me about your communications with Mr. Colvin

2   about whether Mr. Golladay would attend the

3   deposition today?

4          MR. IACONELLI:  I'll repeat it one more

5   time.  Mr. Clements already did that.  So now my

6   question back to you is the same question you put

7   to me.  Please describe for us the substance of all

8   of your telephonic communications with Mr. Colvin,

9   how many you had, on what dates you had them, and

10  what specifically you said to him and he said to

11  you in response concerning this subpoena that

12  you've indicated on the record today he

13  acknowledged service of on behalf of Kenny

14  Golladay?

15         MR. COMERFORD:  I have already done this.

16  It's on the record.  I had one phone conversation

17  with Mr. Colvin.  I believe it was on

18  November 13th, and Mr. Colvin told me that he would

19  contact your office, and then Mr. Colvin told me

20  that he had left a message for Mr. Clements.

21         MR. CLEMENTS:  That's true, he left a

22  message for me.

23         MR. COMERFORD:  And then Mr. Clements said

24  that you, Mr. Iaconelli, had conversations with Jay

25  Colvin, so...

1          MR. CLEMENTS:  I didn't say conversations

2   with an "S."  I said I forwarded the message to

3   Michael and Michael talked to him.  I don't know

4   how many conversations they had.

5          MR. COMERFORD:  Right.  And so we haven't

6   gotten any description of the conversation between

7   Mr. Colvin and Mr. Iaconelli.

8          MR. CLEMENTS:  Hold on, Michael.  Let him

9   speak.

10          MR. IACONELLI:  Mr. Comerford, is there

11   anything else that you want to add concerning what

12   you are describing was the substance of your

13   telephone conversation with Mr. Colvin?

14          MR. COMERFORD:  I think I described it

15   earlier.

16          MR. CLEMENTS:  Did you characterize the

17   case?  Did you explain what the case was about?

18   Did you characterize your position?  I mean --

19          MR. COMERFORD:  He had the subpoena.  The

20   subpoena has the complaint attached.  I believe I

21   noted that fact and I said "You can read it."  I

22   told him it was a tortious interference case

23   between my clients and the defendants.

24          But what I'm still waiting to hear is

25   whether Mr. Iaconelli had any communications with

```
 1   Mr. Colvin about whether or not Mr. Golladay would

 2   attend this deposition today.

 3           MR. IACONELLI:  ...just like you

 4   advocated --

 5           THE REPORTER:  I didn't get the first

 6   part.

 7           MR. IACONELLI:  -- with Arbitrator Kaplan

 8   at the initiation of your first grievance without

 9   including Mr. Clements or me in that initial

10   conversation with the arbitrator.  There seems to

11   be a practice here, Mr. Comerford, of you engaging

12   in ex parte communications with third parties and

13   not including opposing counsel on those

14   communications.  Remember, you initiated the call

15   with Mr. Colvin.  That's what you said on the

16   record today.  I didn't initiate a call with

17   Mr. Colvin, I returned a phone call.  He asked for

18   a returned call.  We extended him the courtesy of

19   the returned call.

20           So there's one other thing.  Why are you

21   not providing immediately the emails that you

22   acknowledged at 9:30 that you exchanged with

23   Mr. Colvin summarizing your communications with him

24   regarding this deposition today?  Why are you not

25   producing them right now?
```

```
 1              MR. COMERFORD:  I have said that I will --
 2              MR. IACONELLI:  ...right now while we're
 3    on the record because I want to question you about
 4    them.
 5              MR. COMERFORD:  Because I can't do that
 6    while we're in the middle of the deposition on the
 7    record, but I will send them around to all
 8    attorneys in this case.
 9              MR. IACONELLI:  ...while we're on the call
10    right now, Mr. Comerford.  He's your co-counsel.
11    Have Mr. Martin forward them to us immediately
12    because we want to interrogate you about these
13    ex parte communications that you had with a lawyer
14    for the Detroit Lions where you made certain
15    representations that we would like to question you
16    about.
17              MR. COMERFORD:  I had to do something to
18    set up this deposition.  I think we all recognize
19    that.
20              MR. CLEMENTS:  I think the issue -- I
21    think the issue --
22              MR. COMERFORD:  May I ask --
23              MR. CLEMENTS:  We're sick of listening to
24    you, John.  I think what the issue is -- Michael is
25    being a little facetious.  This is not a contest
```

1  between lawyers and who exchanged emails with who

2  and what's going on and adverse inferences and this

3  and that, it's about facts.  Golladay is a fact

4  witness, okay.  I'm sure we would all like to have

5  Golladay testify.  I don't understand the point of

6  any of this, of us asking each other about our

7  communications with Colvin.  They're not

8  admissible, they're not relevant to anything that's

9  in this case.  You said it's a tortious

10  interference case.  We're right now wasting

11  everybody's time.  Michael, please, let's get off

12  this call.  So I'm going to ask you, is there

13  anything that hasn't been said about the call, and

14  this isn't a deposition or anything, but just to

15  satisfy Mr. Comerford's morbid curiosity and his

16  conspiracy theory fantasies about everything going

17  on in the case, is there anything you can recall

18  about your call with Mr. Colvin about how long it

19  was and anything else that wasn't said just so we

20  can end this foolishness?

21        MR. IACONELLI:  I think you've already

22  characterized and summarized the substance of my

23  conversation with Mr. Colvin.  I want to be very

24  clear about something.  What I am objecting to is

25  the manner in which I believe Mr. Comerford is

```
 1   trying to make the lawyers in this case fact

 2   witnesses.  It's very presumptuous and transparent.

 3   We're objecting to it.  As far as the timing of

 4   this deposition is concerned, that's something else

 5   stated on the record.  You know, Mr. Comerford,

 6   you're making the argument that you're somehow

 7   being precluded from moving forward with the

 8   deposition that you noticed for the first time on

 9   November 3rd to occur on December 3rd.  The reality

10   is that we had a meeting to confer with you back in

11   May of '18 -- May 2019, excuse me, where all

12   defense counsel recommended to you, in fact urged

13   you, to notice the deposition of Kenny Golladay

14   first, to occur first, so that all these issues

15   could be resolved and the witness could go on

16   record and address the substantive issues that were

17   pending at that time.  You told all counsel that

18   you weren't going to do that, you were going to

19   take discovery in the timing and sequence that you

20   deemed to be appropriate.  In fact, you opposed our

21   motion to stay and to bifurcate discovery so that

22   Mr. Golladay's deposition could be taken first.  So

23   to suggest now on December 4th, after only reaching

24   out to us for the first time on the late evening of

25   December -- today is December 3rd -- after only
```

```
 1    reaching out for the first time on the evening of
 2    December 2nd that you haven't confirmed this
 3    deposition of the witness.  We have been
 4    encouraging you to depose him since the summer of
 5    2019 and it's transparent and the record should
 6    reflect that.  So there's nothing else that I'm
 7    going to add.  If you want to bring a motion, bring
 8    an appropriate motion.  If you want to challenge
 9    what's been represented today, challenge it, but we
10    are not becoming fact witnesses in this case.  I
11    believe that that's what your intention is.  We're
12    not going to cooperate with you in that regard.
13    We're not parties to this case.  And if you want to
14    proceed in that fashion, do what you think you need
15    to do and we will respond appropriately.
16              MR. CLEMENTS:  I guess, John, if you want
17    to involve the lawyers, then we'll all start
18    deposing each other and trying cases against each
19    other, and both our firms will be disqualified from
20    being trial counsel and then that will be that,
21    right?  You can get some other lawyer to represent
22    Bernstein and -- I guess Iles Cooper would be the
23    last guy standing.  So this is foolishness.  It's
24    just complete and utter foolishness and a waste of
25    time.
```

1        I apologize for the noise in the

2    background.  That's my air-conditioning guys doing

3    work.

4        So the question remains at this point,

5    what are we going to do?  It is now 11:02.  I think

6    we can probably say that the witness is not going

7    to appear.  I understand that there is a motion to

8    extend discovery pending -- I'm not sure what the

9    status of it is, if it's been granted or what

10   happened with it.  We still have, even without

11   that, until the end of December if you can get --

12   procure the witness' attendance, but I just don't

13   see the point of continuing on with this -- with

14   all of us on the line sitting around waiting until

15   somebody may or may not show up and arguing with

16   one another when it has nothing to do with

17   anything.  You know, arguments of lawyers are

18   arguments of lawyers.  They have nothing to do with

19   one thing or the other.  So what are we going to

20   do?  My vote is adjourn.  It's Mr. Comerford's

21   deposition.  I think it's his responsibility to

22   deal with the court reporter and pay the court

23   reporter to stay on the line and wait for

24   Mr. Golladay to show up and then she can contact

25   all counsel if he does, in fact, log on.  I think

1   that probably if he doesn't log on by 5:00 p.m. or

2   4:00 p.m., I guess we can probably assume that the

3   deposition is not going to go forward, but I don't

4   think that it's our responsibility to sit here and

5   wait for a deposition that we didn't subpoena the

6   witness and had nothing to do with setting up and

7   bill our clients for it.  I'm open to suggestions

8   from anybody else as to how to handle this.

9          What are we going to do?

10         MR. COOPER:  John, what's your pleasure?

11  Do you want to continue to sit here and wait for

12  Mr. Godot?

13         MR. COMERFORD:  Did you mean to say

14  Mr. Golladay?

15         MR. COOPER:  No, I meant to say Mr. Godot,

16  waiting for Godot.

17         MR. COMERFORD:  Like the play?

18         MR. COOPER:  Like the play.

19         MR. COMERFORD:  Samuel Beckett?

20         I am not going to ask the court reporter

21  to stay on the record.  We're one hour and

22  four minutes past the appointed time.  I cannot get

23  Mr. Colvin to respond to me, so at this point I'm

24  going adjourn the deposition because the witness is

25  not here.  I think I've made a record and we're

1    going to proceed accordingly.

2         MR. CLEMENTS:  Hold on.  I unfortunately

3    had my microphone muted.  Mr. Iaconelli has

4    something to say.  Sorry.  I'm dealing with two

5    electronic devices here.  It's one too many for me.

6         MR. IACONELLI:  Madam Court Reporter, can

7    you hear me?  This is Mike Iaconelli speaking.

8         THE REPORTER:  Yes.

9         MR. IACONELLI:  Mr. Comerford, did

10   Mr. Colvin tell you that my law firm was

11   representing Mr. Golladay in connection with the

12   third-party subpoena that you issued to

13   Mr. Golladay?

14        MR. COMERFORD:  No.

15        MR. IACONELLI:  Did he tell you he,

16   Mr. Colvin, was representing Mr. Golladay in

17   connection with the third-party subpoena that you

18   issued to Mr. Golladay in this matter?

19        MR. COMERFORD:  He told me that he

20   accepted service of the subpoena on behalf of

21   Mr. Golladay pursuant to Mr. Golladay's direction,

22   but he did not tell me that he was going to act as

23   a lawyer for Mr. Golladay as a witness in this

24   case.

25        MR. IACONELLI:  Did he tell you or did he

```
1    identify for you any lawyer that to his knowledge
2    was coming in to represent Mr. Golladay as his
3    legal counsel in connection with the third-party
4    subpoena that you issued Mr. Golladay?
5            MR. COMERFORD:  We didn't talk about that.
6            MR. IACONELLI:  So he didn't tell you that
7    Mr. Golladay was represented by a lawyer; is that
8    what you're saying?
9            MR. COMERFORD:  Yes.
10           MR. IACONELLI:  So going -- so when we
11   started the deposition this morning, you were aware
12   that no lawyer had entered an appearance or advised
13   you as counsel for the party that issued this
14   third-party fact witness subpoenaed that that
15   particular lawyer was actually representing
16   Mr. Golladay for this deposition that you noticed
17   pursuant to a subpoena today; is that correct?
18           MR. COMERFORD:  Yes.
19           MR. IACONELLI:  When are you going to
20   provide all counsel with the emails that you
21   referred to for the first time in your email to all
22   counsel or specifically your email to Mr. Cooper
23   last night at 9:30?  You said you were going to do
24   it today, but what time today are you going to be
25   forwarding us all of your email communications
```

1   between Mr. Colvin and anyone in the firm and

2   Mr. Colvin?

3           MR. COMERFORD:  I'll do it within three

4   hours.

5           MR. IACONELLI:  So that would be by

6   2:00 p.m. Eastern standard time, agree?

7           MR. COMERFORD:  I will do it within three

8   hours.  I don't know what time that is.

9           MR. CLEMENTS:  We'll stipulate that it's

10  2:00.

11          MR. IACONELLI:  We're going off the

12  record.

13          MR. CLEMENTS:  Are we done?

14          MR. COMERFORD:  Do I get to ask questions

15  of Mr. Iaconelli now?

16          MR. CLEMENTS:  Iles can follow up.

17  There's no more questions of anything anymore.  Get

18  us the emails whenever you can.  If they don't come

19  at 2:00, we won't sanction you or anything.

20          MR. COMERFORD:  My question to

21  Mr. Iaconelli, which I don't think has been

22  answered yet, is, did he have any communications

23  with Mr. Colvin whether or not Kenny Golladay was

24  going to show up for the deposition today?

25          That's a question to you, Mr. Iaconelli.

1          MR. CLEMENTS:  I think he hung up, but

2     I'll answer it for him.  It's what I said, it

3     wasn't -- we had no idea.  In other words,

4     Mr. Colvin didn't know whether or not he was going

5     to show up -- whatever he said.  We were going by

6     what you were telling us.  I'll be honest with

7     you -- I'll be honest with you, this has happened

8     to me, okay?  Third parties don't show up.  But

9     until you sent us the email last night -- was it

10    last night or late afternoon -- we were

11    anticipating Golladay to be here.  I have a list of

12    questions for him.  We were going to ask him, too.

13    We didn't get any exhibits from you.  We were about

14    to email you to ask for the exhibits.  So obviously

15    nothing was said to anybody that had anything to do

16    with or -- that would have indicated to any of us

17    that Golladay wasn't going to show up.

18          Now, personally, because I'm a huge

19    football fan, I had massive suspicions.  And if I

20    was planning on taking the deposition of an

21    athlete, I doubt if I would have scheduled it for

22    the Thursday of a game day, an NFL athlete.  The

23    only worse time to schedule it would be the Sunday

24    afternoon when he's playing.  So if you try to get

25    the deposition, you might want to try to arrange a

```
 1    different time.  We'll be amenable to that.  If
 2    it's going to be a two or three-hour deposition,
 3    you might be able to do it in the evening or when
 4    these guys have off.  I don't know when Detroit has
 5    off.  Sometimes they have off on Monday, the NFL
 6    teams, veteran players might have some time.  So I
 7    had a suspicion this was never going to happen, but
 8    nobody ever told us it wasn't going to happen.  And
 9    usually what happens is when the person in your
10    situation is taking the deposition and has not
11    gotten confirmation that the witness is going to
12    show up, you tell everybody and you adjourn it, so
13    that's what my puzzlement is right now.  This is
14    normal litigation.  This isn't all-out war,
15    Mr. Comerford.  This isn't some giant conspiracy
16    over Golladay and whatever you think your going to
17    get, $2.1 million, and maybe you have it on a
18    contingency fee, I don't know, but it's just normal
19    litigation.  This happens.  People don't show up.
20    So my only suggestion is that we -- right now this
21    is like one of those lawyer meetings on TV where
22    you have four or five lawyers at 4- or 500 bucks an
23    hour.  It's just not something me or my firm does,
24    wasting time, wasting client's time like this.  And
25    all this stuff on the record is completely
```

1    ridiculous.  You don't cross-examine a lawyer at a

2    deposition, you don't -- it's unprofessional.  It's

3    completely unprofessional.  I suggest that you

4    would concentrate on maybe trying to procure the

5    witness' attendance and tell us when the deposition

6    is going to take place and maybe try to do it at a

7    time that's convenient for the witness so we're not

8    in this --

9         MR. COOPER:  I think that's excellent

10   advice.  I think John probably never thought of any

11   of that, and, therefore, it's been very helpful.

12   Can we now say good afternoon?

13        MR. CLEMENTS:  I'd like to.  Are we done?

14        MR. COOPER:  Are we done, John?

15        MR. COMERFORD:  Yeah.  I mean, we're now

16   an hour and 11 minutes past the appointed time and

17   the witness has not shown up, so I am going adjourn

18   the deposition.

19        MR. COOPER:  Thank you.  Have a good day,

20   everybody.

21        MR. COMERFORD:  You, too.

22              - - - - -

23   (The proceedings were concluded at 11:11 a.m.)

24              - - - - -

25

```
 1              C E R T I F I C A T E

 2
    STATE OF OHIO,    )
 3                    )  SS:
    WAYNE COUNTY,     )
 4

 5
         I, Stephanie R. Dean, Court Reporter and Notary
 6  Public within and for the State of Ohio, duly
    commissioned and qualified, do hereby certify that
 7  these proceedings were taken by me and reduced to
    Stenotype, afterwards prepared and produced by
 8  means of Computer-Aided Transcription and that the
    foregoing is a true and correct transcription of
 9  the proceedings so taken as aforesaid.
                 I do further certify that these
10  proceedings were taken at the time and place in the
    foregoing caption specified.
11               I do further certify that I am not a
    relative, employee of or attorney for any party or
12  counsel, or otherwise financially interested in
    this action.
13       I do further certify that I am not, nor is the
    court reporting firm with which I am affiliated,
14  under a contract as defined in Civil Rule 28(D).
                 IN WITNESS WHEREOF, I have hereunto set my
15  hand and affixed my seal of office at Doylestown,
    Ohio on this 3rd day of December, 2020.
16

17

18

19

20

21                _____
                     Stephanie R. Dean, RPR
22
         My commission expires August 30, 2025.
23                        - - -

24

25
```

**A**

a.m 1:12 4:23 36:23
able 7:6 9:14 10:9 17:14 20:13,24 35:3
accept 5:17
accepted 7:17 9:7 17:5 31:20
accomplished 12:22
accusation 10:3,6 15:2,3 17:8
accusations 21:11
acknowledged 22:13 24:22
acknowledgem... 19:7
act 31:22
action 37:12
add 23:11 28:7
Additional 5:11
address 27:16
adequately 10:16
adjourn 8:11 29:20 30:24 35:12 36:17
admissible 26:8
adverse 26:2
advice 36:10
advised 32:12
advocated 24:4
affiliated 37:13
affirmatively 17:16
affixed 37:15
aforesaid 37:9
afternoon 34:10 34:24 36:12
agent 5:8,25,25
ago 21:6
agree 33:6
ahead 15:5 16:10 16:11,15 20:25 21:12
air-conditioning 29:2
al 1:6
all-out 35:14
allegation 17:12
allow 21:8
amenable 35:1
Amendment 10:24
answer 34:2
answered 33:22
anticipating 7:8

34:11
anybody 7:2 8:18 13:24 30:8 34:15
anymore 33:17
apologize 29:1
apparently 20:11
appear 29:7
appearance 5:24 32:12
APPEARANCES 2:1
appears 6:14
application 10:18 18:16
appointed 30:22 36:16
appropriate 21:13 27:20 28:8
appropriately 28:15
arbitration 15:11
arbitrator 24:7,10
arguing 29:15
argument 27:6
arguments 29:17 29:18
arrange 17:18 34:25
arrive 16:25
asked 24:17
asking 9:21 11:10 14:2 16:22 18:13,18,24 21:20 26:6
assume 8:7 18:6 30:2
assumed 9:11
athlete 34:21,22
attached 5:9 23:20
attempting 17:13
attend 22:2 24:2
attendance 17:17 29:12 36:5
attending 18:9,14
attention 10:6
attorney 14:6 37:11
attorneys 6:3 25:8
audio 11:23 12:4 14:17 18:17
August 37:22
Authentic 2:7
Authentics 2:6
authorize 5:16
authorized 5:8
Autographs 2:8

available 6:13,15
avoid 20:2
aware 7:2 12:10 32:11

**B**

back 7:14 9:14 11:25 18:3,4 20:1,15 22:6 27:10
background 29:2
basically 7:16 12:6,22
Beckett 30:19
becoming 28:10
behalf 2:2,6,13 5:18 7:18 22:13 31:20
believe 10:20 22:17 23:20 26:25 28:11
Bennett 2:3
Bernstein 1:3 2:20 4:5 28:22
Bernstein's 18:11
best 20:10
bifurcate 27:21
bill 8:19 10:21 30:7
billable 14:13
blank 11:4
blocking 17:9
blue 13:9
Boone 2:7,7,8
Boulevard 2:3
box 13:9
Branzburg 2:9
bring 10:5 28:7,7
bucks 35:22
budget 15:13

**C**

C 4:1 37:1,1
CAA 1:6 17:3
call 7:12,13,13,14 7:16 8:18 9:25 11:13 12:5,8 13:12 15:15 16:5,11,13,15 20:12 24:14,16 24:17,18,19 25:9 26:12,13 26:18
called 11:22
calls 8:12 18:3
caption 37:10
case 1:5 6:14 11:17 15:2,6

19:15 20:7
21:21 23:17,17
23:22 25:8 26:9
26:10,17 27:1
28:10,13 31:24
cases 28:18
center 19:15
certain 21:5 25:14
certify 37:6,9,11 37:13
challenge 28:8,9
characterize 23:16,18
characterized 26:22
Civil 37:14
claim 13:22
Clarity 1:3 4:4
clear 26:24
Clements 2:8 6:6 6:7,19,21 8:25 9:2,24 10:14,22 11:8,12,15,19 12:3 13:1,3,4,17 14:20 15:1,21 16:4,10,14,20 17:7 19:7,22 20:5,9,18,21 21:18 22:5,20 22:21,23 23:1,8 23:16 24:9 25:20,23 28:16 31:2 33:9,13,16 34:1 36:13
click 13:8
client 14:12 15:13
client's 35:24
clients 8:19 23:23 30:7
co-counsel 7:14 10:4 25:10
code 13:13
Colvin 5:7,17,21 5:23 6:1,4,4,20 6:24 7:17 9:5,6 9:6,23 10:12 12:6,9 13:24 15:16 18:19 19:3,4,8,12,14 21:16 22:1,8,17 22:18,19,25 23:7,13 24:1,15 24:17,23 26:7 26:18,23 30:23 31:10,16 33:1,2 33:23 34:4
come 10:23 15:22 15:25 33:18

Comerford 2:2 4:3,3,15 6:11,17 7:4,5,16 8:6,24 9:21 10:3,8,18 11:6,10,18,25 12:12,15,24 13:2,10 14:15 14:21 15:5,17 15:19 16:9,12 16:24 17:15 18:13 19:6 20:16,16 21:12 21:14,19,25 22:15,23 23:5 23:10,14,19 24:11 25:1,5,10 25:17,22 26:25 27:5 30:13,17 30:19 31:9,14 31:19 32:5,9,18 33:3,7,14,20 35:15 36:15,21
Comerford's 26:15 29:20
coming 32:2
commission 37:22
commissioned 37:6
common 14:7
communicate 20:14
communicated 7:24 21:24
communications 9:22 10:12 12:14 18:19 19:12 21:16 22:1,8 23:25 24:12,14,23 25:13 26:7 32:25 33:22
complaint 23:20
complete 28:24
completely 35:25 36:3
computer 13:11 18:17 21:8,8
Computer-Aided 37:8
concentrate 36:4
concerned 27:4
concerning 21:21 22:11 23:11
concluded 36:23
conduct 18:23
conducted 4:19
confer 27:10

conference 4:20
confirmation
  35:11
confirmed 28:2
connection 31:11
  31:17 32:3
consider 16:18
conspiracy 15:9
  26:16 35:15
contact 6:2 8:22
  17:5 18:4 22:19
  29:24
contacted 8:14
content 19:10
  21:15
contest 25:25
contingency
  35:18
continue 30:11
continuing 29:13
contract 37:14
convenient 36:7
conversation
  5:20 10:16
  19:11 22:16
  23:6,13 24:10
  26:23
conversations
  13:24 19:8
  22:24 23:1,4
Cooper 2:14 6:9
  6:16 13:16
  14:18,24 15:15
  15:18 16:2,18
  16:22 18:6,21
  19:14 20:2,19
  28:22 30:10,15
  30:18 32:22
  36:9,14,19
Cooper's 9:15
cooperate 28:12
coordinate 5:24
  7:21 9:8,10
coordinating 7:20
copy 5:5
corporate 5:6
correct 17:19
  32:17 37:8
counsel 5:6 16:21
  17:3 21:20
  24:13 27:12,17
  28:20 29:25
  32:3,13,20,22
  37:12
COUNTY 37:3
court 1:1 8:13
  15:3 17:20 18:2
  18:24 20:25

21:1 29:22,22
  30:20 31:6 37:5
  37:13
courtesy 14:8
  24:18
courts 8:16
COVID 5:8
COVID-19 4:20
Craig 2:8
cross-examine
  16:20 36:1
cry 15:8
curiosity 26:15
cute 19:19

**D**

D 2:2 3:1 4:1
d/b/a 2:7
Daryl 2:7
date 4:22
dated 4:16,25
  5:14
dates 22:9
day 16:17 18:6
  34:22 36:19
  37:15
days 14:22
deal 29:22
dealer 17:4 19:16
dealing 15:23
  31:4
Dean 1:18 37:5,21
December 1:12
  4:6,23 27:9,23
  27:25,25 28:2
  29:11 37:15
deemed 27:20
defendants 1:7
  2:6,13 17:4
  21:21 23:23
defense 27:12
defined 37:14
delivering 5:5
depose 28:4
deposing 28:18
deposition 4:7,11
  4:19,24 7:9,10
  7:11,20,21 8:3
  8:22 9:9 10:13
  12:10,15 14:7,9
  14:23,25 15:25
  16:1,1,19,23
  17:11,18,19,23
  18:9,10,15,20
  19:9 21:17 22:3
  24:2,24 25:6,18
  26:14 27:4,8,13
  27:22 28:3

29:21 30:3,5,24
  32:11,16 33:24
  34:20,25 35:2
  35:10 36:2,5,18
depositions 9:10
describe 10:11
  21:15 22:7
described 23:14
describing 23:12
description 23:6
Detroit 5:7 7:12
  25:14 35:4
devices 31:5
dial 13:15 16:10
dial-in 13:10,11
  14:16 18:16
difference 13:20
  14:1
different 35:1
difficulty 11:23
  12:4 13:6
dime 18:3
dining 10:25
direction 31:21
discovery 27:19
  27:21 29:8
discussed 12:9
disqualified 28:19
distancing 4:22
DISTRICT 1:1,1
documents 7:7
doing 12:21 13:7
  15:4 18:7,8,11
  18:12 19:5 29:2
doubt 34:21
doubts 8:2
Dowd 2:3
Doylestown
  37:15
ducks 9:11
due 5:8
duly 37:6

**E**

E 3:1 4:1,1 37:1,1
earlier 23:15
earth 20:4
Eastern 4:6,23
  33:6
effect 7:5
Eisenhour 2:7
electronic 31:5
email 6:4 7:4
  12:12 15:17
  21:5,9,24 32:21
  32:22,25 34:9
  34:14
emailed 6:4

emails 6:9 12:14
  24:21 26:1
  32:20 33:18
employee 37:11
encouraging 28:4
enforce 8:8 9:19
  9:19 12:18
engaging 24:11
enter 4:11 6:12
entered 32:12
Enterprises 2:7,7
ESQ 2:2,8,9,14,15
et 1:6
ethics 8:22
evening 27:24
  28:1 35:3
everybody 8:21
  9:12 11:17 14:8
  20:3,15,24
  35:12 36:20
everybody's
  26:11
ex 24:12 25:13
exactly 15:8
excellent 36:9
exchanged 24:22
  26:1
excuse 27:11
Exhibit 3:3,3,4
  4:15,17,17 5:1
  5:14,19
exhibits 3:2 4:11
  4:13 6:12 7:7
  34:13,14
exit 8:20
expected 19:3
expires 37:22
explain 6:8,19
  9:22,25 10:1,1
  18:18 23:17
explained 17:6,7
  18:21 20:22
extend 29:8
extended 24:18

**F**

F 37:1
facetious 25:25
fact 23:21 26:3
  27:1,12,20
  28:10 29:25
  32:14
facts 26:3
failed 19:2
fan 34:19
fantasies 26:16
far 27:3
fashion 28:14

fee 35:18
Fifth 10:23
figure 20:9,11
filed 7:3
financially 37:12
find 19:18
fine 7:18 12:6
finest 20:4
firm 10:4 14:12
  31:10 33:1
  35:23 37:13
firms 28:19
first 7:1 24:5,8
  27:8,14,14,22
  27:24 28:1
  32:21
five 35:22
fix 14:17
Floor 2:10
follow 33:16
follows 5:6
foolishness 26:20
  28:23,24
football 4:9 34:19
forced 5:13
foregoing 37:8,10
Forsyth 2:3
forward 25:11
  27:7 30:3
forwarded 23:2
forwarding 32:25
four 30:22 35:22
fourth 5:13
France 6:1 7:23
  19:17
France's 6:2
frequently 14:4
Friedberg 2:15
further 37:9,11,13

**G**

G 4:1
gallery 12:25
game 8:4 34:22
Gerry 2:13
getting 16:6,7
  19:20,25
giant 35:15
gist 12:7
Giuliani 15:4
give 19:22
go 5:12,13 8:16
  9:18,19 11:12
  11:25 14:3 15:3
  15:5 16:10,10
  16:15 17:16
  18:1 20:5,25
  21:12 27:15

30:3
**Godot** 30:12,15
  30:16
**going** 6:11 7:9 8:1
  8:3,8,16,20 9:13
  10:8 12:21
  13:17,18 14:10
  15:16 16:5,12
  16:14,16 17:13
  17:25 18:5,10
  19:23 20:11,12
  26:2,12,16
  27:18,18 28:7
  28:12 29:5,6,19
  30:3,9,20,24
  31:1,22 32:10
  32:19,23,24
  33:11,24 34:4,5
  34:12,17 35:2,7
  35:8,11,16 36:6
  36:17
**Golladay** 4:8,9,16
  4:18 5:3,12,16
  5:18,23 6:13 7:2
  7:6,18 8:9,10,12
  9:7,19,20 12:15
  13:25 14:1
  15:16 17:10
  18:3 22:2,14
  24:1 26:3,5
  27:13 29:24
  30:14 31:11,13
  31:16,18,21,23
  32:2,4,7,16
  33:23 34:11,17
  35:16
**Golladay's** 5:24
  5:25 21:17
  27:22 31:21
**good** 36:12,19
**gotten** 23:6 35:11
**granted** 29:9
**grievance** 24:8
**guess** 18:24
  28:16,22 30:2
**guy** 15:23 17:20
  28:23
**guys** 29:2 35:4

**H**
**hand** 37:15
**handle** 30:8
**happen** 20:6 35:7
  35:8
**happened** 29:10
  34:7
**happens** 14:4
  20:6 35:9,19

**Harrison** 2:9
**Harvey** 2:9
**hear** 11:17,22
  20:24,25 21:2
  23:24 31:7
**heard** 14:9
**hearing** 19:23
**Hello** 20:20
**helpful** 36:11
**Herber** 2:15 18:7
**Herber's** 9:16
**hereunto** 37:14
**Hold** 23:8 31:2
**honest** 34:6,7
**hop** 18:14
**hopefully** 14:16
  20:13,23
**hour** 14:12,13
  19:25 30:21
  35:23 36:16
**hours** 33:4,8
**huge** 34:18
**hung** 34:1

**I**
**Iaconelli** 2:9 7:15
  8:25 9:3,22
  10:11,14,19,21
  11:1,7,11 13:5
  13:15 14:15
  18:8,14,18 19:8
  19:10,13 20:12
  20:20 21:1,4,15
  21:18 22:4,24
  23:7,10,25 24:3
  24:7 25:2,9
  26:21 31:3,6,7,9
  31:15,25 32:6
  32:10,19 33:5
  33:11,15,21,25
**Iaconelli's** 9:15
**ID** 13:14
**idea** 11:2 18:23
  34:3
**identification**
  4:14
**identify** 32:1
**Iles** 2:14 13:16
  20:18 28:22
  33:16
**immediately**
  24:21 25:11
**important** 8:5
**including** 24:9,13
**incorrect** 17:10
**indicated** 18:15
  22:12 34:16
**indicates** 10:19

**individual** 5:6
**inferences** 26:2
**inform** 21:10
**information** 3:4
  5:11 6:2,3 14:16
  18:17
**informed** 5:12,21
  21:23
**initial** 24:9
**initiate** 24:16
**initiated** 24:14
**initiation** 24:8
**inquisition** 18:23
**insane** 18:25
**intention** 28:11
**interested** 37:12
**interference**
  13:22 23:22
  26:10
**International** 1:3
  4:5
**Internet** 19:24
**interrogate** 25:12
**interrupted** 10:10
**inviting** 20:3
**involve** 28:17
**issue** 7:19 8:10
  11:24 12:17,20
  25:20,21,24
**issued** 31:12,18
  32:4,13
**issues** 14:17
  27:14,16

**J**
**J** 2:8
**J.T** 2:15 20:18
**jail** 13:19
**Jake** 19:17
**Jason** 1:3 2:7,20
  4:5
**Jay** 5:6,17 10:12
  18:19 21:16
  22:24
**jcomerford@do...**
  2:5
**Jersey** 11:2
**Jimmy** 19:17
**John** 2:2 4:3 9:3
  10:22 13:1,16
  14:18,24 15:15
  16:2,18,22,23
  18:21 20:16
  21:12 25:24
  28:16 30:10
  36:10,14
**Jones** 2:15
**judge** 10:6 15:4

16:5,13

**K**
**Kaplan** 24:7
**keeping** 17:23
**Kenneth** 5:16,18
**Kenny** 4:8 22:13
  27:13 33:23
**Klehr** 2:9
**know** 8:19 11:24
  12:4,8,9,10,13
  12:16 13:7,8
  14:3,4 16:5 18:8
  18:10,22 19:23
  19:24,25 20:11
  23:3 27:5 29:17
  33:8 34:4 35:4
  35:18
**knowledge** 32:1
**knows** 14:20

**L**
**L-u-t-r-e-n** 5:3
**late** 27:24 34:10
**law** 10:4 31:10
**lawsuit** 13:21
**lawyer** 5:7 25:13
  28:21 31:23
  32:1,7,12,15
  35:21 36:1
**lawyers** 21:10
  26:1 27:1 28:17
  29:17,18 35:22
**League** 4:9
**leave** 8:24
**left** 6:5 22:20,21
**legal** 32:3
**legally** 17:15
**let's** 11:12,25 20:5
  26:11
**letter** 5:9,14
**life** 19:25
**line** 10:20,21 11:2
  29:14,23
**Lions** 5:7 7:13
  25:14
**list** 34:11
**listening** 12:7
  21:11 25:23
**litigating** 14:5
  15:11
**litigation** 35:14,19
**little** 25:25
**LLC** 1:3 2:6,15 4:5
**LLP** 2:3,9
**log** 21:6 29:25
  30:1
**long** 12:21 14:4

26:18
**look** 16:14
**Louis** 2:4
**Lutren** 5:2,3,4,10
  5:11

**M**
**M** 11:7
**Madam** 31:6
**making** 10:3
  21:12 27:6
**manner** 26:25
**marked** 4:13
**Market** 2:10
**Martin** 19:18
  25:11
**massive** 34:19
**matter** 6:22 7:8
  9:4 31:18
**matters** 9:6
**mean** 11:3 13:8
  13:19 14:2
  15:22 23:18
  30:13 36:15
**means** 37:8
**meant** 30:15
**meeting** 13:14
  27:10
**meetings** 35:21
**memorabilia** 17:4
  19:15,16
**message** 6:5,24
  22:20,22 23:2
**miaconelli@kle...**
  2:12
**Michael** 2:9 11:20
  20:21 23:3,3,8
  25:24 26:11
**microphone** 31:3
**middle** 1:1 16:23
  25:6
**Mike** 31:7
**million** 35:17
**minute** 11:13
**minutes** 12:22
  19:20 30:22
  36:16
**MO** 2:4
**Monday** 35:5
**morbid** 26:15
**morning** 32:11
**motion** 27:21 28:7
  28:8 29:7
**moving** 29:7
**mute** 13:9
**muted** 10:20 31:3
**MVP** 2:6

**N**

N 3:1 4:1
name 5:2
named 5:5
National 4:9
near 5:12
need 13:14 28:14
never 9:13 15:10
 17:13 19:25
 35:7 36:10
new 5:8 11:1
 19:14
NFL 8:4 34:22
 35:5
NFLPA 15:11
night 21:23 32:23
 34:9,10
noise 29:1
normal 35:14,18
Notary 37:5
noted 23:21
notice 3:3 4:15
 27:13
noticed 27:8
 32:16
noticing 14:7
November 4:16
 4:25 5:4,9,15,16
 22:18 27:9
number 13:12
 16:15 17:8
nuts 15:12

**O**

O 4:1
oath 9:4
objecting 26:24
 27:3
objections 7:3
obligated 18:22
obligation 9:8,9
 10:1 17:16,21
obstructionist
 17:23
obviously 19:2
 34:14
occur 27:9,14
Ochs 2:14
office 22:19 37:15
Ohio 37:2,6,15
okay 9:18 15:5
 17:14 21:18
 26:4 34:8
online 8:13
open 17:24 30:7
opposed 27:20
opposing 24:13
organization 5:7

organized 17:19
over-litigating
 15:6
owe 14:11,12

**P**

P 4:1
p.m 5:9 30:1,2
 33:6
PA 2:10,16
page 5:14
pages 4:18
pandemic 4:21
part 19:2 24:6
parte 24:12 25:13
participants
 12:25
participate 7:10
particular 32:15
parties 14:5 24:12
 28:13 34:8
party 14:3 15:24
 19:1 21:20,22
 32:13 37:11
pass 13:13
pay 8:14 29:22
pending 27:17
 29:8
PENNSYLVANIA
 1:1
people 21:7 35:19
person 17:5 35:9
personally 34:18
Philadelphia 2:10
 11:1
phone 5:20 13:12
 22:16 24:17
pictures 19:16,19
place 7:9 8:22
 14:10 36:6
 37:10
places 20:4
Plaintiffs 1:4 2:2
 4:4
planning 18:9,11
 34:20
play 30:17,18
players 35:6
playing 34:24
please 6:20 9:1,22
 12:1 22:7 26:11
pleasure 30:10
Pohlman 12:24
 21:7
point 6:21 7:25
 8:6 10:2,3 13:1
 16:4 26:5 29:4
 29:13 30:23

position 23:18
Pottsville 2:16
 20:3
powers 13:19
practical 8:2
practice 8:5 24:11
precluded 27:7
prepared 9:12
 37:7
Present 2:19
 20:19
pressing 12:20
presumptuous
 27:2
preventing 17:9
previously 10:20
probably 29:6
 30:1,2 36:10
problem 9:14,15
 9:16,16 20:2
problems 20:23
procedure 5:8
proceed 8:15
 28:14 31:1
proceedings
 36:23 37:7,9,10
process 3:4 5:2
 5:17
procure 17:16
 29:12 36:4
produce 19:3
produced 37:7
producing 24:25
prosecutorial
 13:18
prosecutory
 10:23
prove 17:13,14
provide 32:20
provided 6:3
providing 24:21
Public 37:6
purpose 14:18
purposes 4:14
pursuant 31:21
 32:17
put 6:23 8:6 9:17
 10:5,6 15:22
 22:6
putting 7:7
puzzlement 35:13

**Q**

qualified 37:6
quarantine 5:13
question 13:2
 21:13,14,25
 22:6,6 25:3,15

 29:4 33:20,25
questioning 9:18
questions 33:14
 33:17 34:12
quite 14:4

**R**

R 1:18 4:1 37:1,5
 37:21
rate 14:13
reaching 27:23
 28:1
read 23:21
reads 5:15
ready 9:12 17:11
reality 27:9
really 7:8,19 15:6
 16:6,7
reason 16:2
recall 26:17
receive 5:17 7:1,4
 7:12
received 5:22
 21:5
receiver 4:8
recess 11:14 20:8
recognize 25:18
recommended
 27:12
record 1:9 6:23
 8:7 9:17 10:5,7
 10:12 11:12,13
 11:21 12:1,2,3
 12:24 14:22
 15:22 16:24
 17:1,3 18:2 20:5
 20:22 21:19
 22:12,16 24:16
 25:3,7 27:5,16
 28:5 30:21,25
 33:12 35:25
recorded 4:24
Redland 2:13
reduced 28:12
referred 7:13,14
 32:21
referring 6:10
reflect 28:6
regard 28:12
regarding 24:24
relative 37:11
relevancy 12:16
relevant 26:8
remains 29:4
remember 6:25
 7:22 24:14
Remote 2:1 4:1
repeat 22:4

reporter 8:13 12:2
 17:20 18:2,24
 20:25 21:1,3
 24:5 29:22,23
 30:20 31:6,8
 37:5
reporting 37:13
represent 14:1
 21:23 28:21
 32:2
representations
 25:15
represented
 13:25 28:9 32:7
representing 4:4
 31:11,16 32:15
requesting 10:11
requirements
 4:22
reschedule 8:17
resolve 16:16
resolved 27:15
respect 19:11
Respectfully
 14:24
respond 21:13
 28:15 30:23
response 15:18
 15:20 22:11
responsibility
 29:21 30:4
restrictions 4:21
return 5:1
returned 24:17,18
 24:19
ridiculous 16:8
 36:1
right 17:23 18:4,5
 20:14 23:5
 24:25 25:2,10
 26:10 28:21
 35:13,20
Road 2:16
Robert 5:2
room 10:25
row 9:11
RPR 1:18 37:21
Rudy 15:4
Rule 37:14

**S**

S 4:1 23:2
Samuel 30:19
sanction 33:19
satisfy 26:15
saying 9:2 17:21
 32:8
says 4:18,24 11:6

13:5
schedule 34:23
scheduled 34:21
screen 4:12 11:4
 11:6
seal 37:15
see 5:8 11:4,6,8
 20:24 21:7
 29:13
seeing 11:3,4
seen 7:6
send 6:18 25:7
sense 14:7
sent 14:15 15:17
 21:6,9,22 34:9
sequence 27:19
serve 7:6
served 4:9 5:3,4
 12:12 17:20
server 3:4 5:2
service 5:17 7:17
 12:9 17:5 21:7
 22:13 31:20
set 25:18 37:14
setting 30:6
share 4:12
Short 11:14 20:8
show 6:13 8:1,3
 12:19 13:23
 14:3,6 15:16
 17:10,25 29:15
 29:24 33:24
 34:5,8,17 35:12
 35:19
shown 4:10 36:17
shut 16:3
sick 25:23
signed 5:10,18
Silver 19:17
simply 18:1
sit 30:4,11
sitting 10:25
 16:16 18:5
 29:14
situation 35:10
Smith 2:7
social 4:21
somebody 29:15
somewhat 11:19
Sorry 11:15 31:4
sort 15:9
speak 5:22 11:11
 11:20 18:14
 21:9 23:9
speakerphone
 20:13
speaking 21:7
 31:7

special 13:18
specifically 22:10
 32:22
specified 37:10
spent 9:13
Sports 1:3,6 2:13
 4:4 17:3
spot 18:5
SS 37:3
St 2:4
standard 33:6
standing 28:23
start 28:17
started 32:11
starting 8:23
state 19:10 37:2,6
stated 5:23 6:5
 27:5
Statement 1:9
STATES 1:1
status 16:19 29:9
stay 8:13,18 27:21
 29:23 30:21
stenography 4:24
Stenotype 37:7
Stephanie 1:18
 37:5,21
stipulate 13:4
 33:9
Street 2:10
stuff 15:13 35:25
subpoena 3:3
 4:10,16,18 5:5
 5:22 7:2,3 8:9
 8:16 9:7,19,20
 12:11,18 21:22
 22:11 23:19,20
 30:5 31:12,17
 31:20 32:4,17
subpoenaed
 17:18 19:1
 32:14
subsequent 6:25
subsequently
 5:20 6:5
substance 22:7
 23:12 26:22
substantive 27:16
suburbs 11:1
suggest 8:11
 27:23 36:3
suggestion 8:6
 18:1 35:20
suggestions 30:7
Suite 2:3
sum 10:16
summarized
 26:22

summarizing
 24:23
summer 28:4
Sunday 8:4 34:23
sure 8:1 17:21,24
 26:4 29:8
suspicion 35:7
suspicions 34:19

_____

T

T 37:1,1
take 7:9 11:13
 14:10 27:19
 36:6
taken 27:22 37:7
 37:9,10
talk 6:23 7:19 12:6
 32:5
talked 7:23 23:3
talking 11:21
teams 35:6
technical 13:6
 20:10,23
telephone 13:15
 14:16 18:16
 23:13
telephonic 22:8
tell 14:8 15:4,12
 17:24 22:1
 31:10,15,22,25
 32:6 35:12 36:5
telling 34:6
testify 26:5
Thank 36:19
theory 26:16
thing 9:5 11:3,8
 11:16 18:7
 24:20 29:19
things 11:16
 19:24
think 7:11 8:18
 12:20 16:4 17:6
 23:14 25:18,20
 25:21,24 26:21
 28:14 29:5,21
 29:25 30:4,25
 33:21 34:1
 35:16 36:9,10
third 14:3,5 15:24
 21:22 24:12
 34:8
third-party 4:7 9:8
 9:10 12:19,19
 13:23 16:1
 17:17 21:21
 31:12,17 32:3
 32:14
thought 36:10

three 17:4 33:3,7
three-hour 35:2
throw 13:19
Thursday 5:14,15
 8:4,5 34:22
time 4:5,6,22,23
 6:7 8:17 9:13
 13:20 14:10,14
 18:13 22:5
 26:11 27:8,17
 27:24 28:1,25
 30:22 32:21,24
 33:6,8 34:23
 35:1,6,24,24
 36:7,16 37:10
timing 27:3,19
today 6:14,16,17
 7:9 21:17 22:3
 22:12 24:2,16
 24:24 27:25
 28:9 32:17,24
 32:24 33:24
Todd 6:1 7:23
 19:17
told 5:25 6:22 9:3
 15:10,25 17:9
 22:18,19 23:22
 27:17 31:19
 35:8
tomorrow 18:12
tortious 13:21
 23:22 26:9
transcription 37:8
 37:8
transparent 27:2
 28:5
transpired 14:22
travel 4:21
trial 28:20
tried 20:2
true 6:24 22:21
 37:8
trust 8:21
try 8:8 17:1 34:24
 34:25 36:6
trying 14:21 17:1
 17:2,14 20:9
 27:1 28:18 36:4
TV 35:21
two 11:15 17:3,8
 19:20 31:4 35:2
typically 8:5

_____

U

uncharacteristic
 11:20
understand 13:21
 13:22 26:5 29:7

understanding
 7:15 8:12
unfortunately
 31:2
UNITED 1:1
unlimited 15:13
unmute 13:9 21:9
unprofessional
 36:2,3
urged 27:12
use 13:18
usually 14:6 35:9
utter 28:24

_____

V

veteran 35:6
video 4:19,25
 8:18 11:4 12:24
 18:15
Videoconference
 1:9
videotaped 4:7
view 12:25
voice 6:24
vote 29:20
vs 1:5

_____

W

wait 18:2 29:23
 30:5,11
waiting 16:25
 23:24 29:14
 30:16
walk 13:6
want 7:10 8:13
 9:18 10:10,15
 12:5,6 15:2,3,8
 15:8 21:4 23:11
 25:3,12 26:23
 28:7,8,13,16
 30:11 34:25
wanted 8:7 12:9
wants 8:7,18 9:25
war 35:14
wasn't 7:19 12:8
 26:19 34:3,17
 35:8
waste 28:24
wasting 13:20
 14:10,14 26:10
 35:24,24
way 19:19
WAYNE 37:3
wclements@kle...
 2:11
we'll 6:12,14 8:14
 8:14,17 18:24
 19:22 20:13,24

28:17 33:9 35:1
**we're** 7:25 9:2,12
  10:19 11:21
  13:20 14:10
  15:4,24 16:16
  16:18,19,24,25
  17:9,11 20:21
  25:2,6,9,23
  26:10 27:3
  28:11,13 30:21
  30:25 33:11
  36:7,15
**we've** 12:22 17:1
  19:4
**wedding** 19:19
**welcome** 16:9,13
**went** 19:1
**weren't** 27:18
**Westwood** 2:16
**WHEREOF** 37:14
**wide** 4:8
**William** 2:8 6:6
**Williamson** 2:15
**witness** 4:7 8:1,3
  14:9 16:25 17:2
  17:17,22,25
  19:1,3,5 26:4
  27:15 28:3 29:6
  30:6,24 31:23
  32:14 35:11
  36:7,17 37:14
**witness'** 29:12
  36:5
**witnesses** 13:23
  27:2 28:10
**words** 34:3
**work** 13:11 20:10
  29:3
**working** 18:6,17
**works** 13:9
**worse** 34:23
**writes** 5:4,11

---
**X**
---
**X** 3:1

---
**Y**
---
**Yeah** 11:8 36:15

---
**Z**
---
**zero** 9:8,9 12:23
**Zoom** 10:18 11:3
  18:15

---
**0**
---

---
**1**
---
**1** 3:3 4:13,15,17

**1-877-853-5257**
  13:13
**1:19-cv-00305-YK**
  1:5
**10** 2:16
**10:00** 4:23
**10:20** 1:12
**10:21** 4:6
**10:30** 7:25
**10:48** 19:20
**11** 19:22 36:16
**11:02** 29:5
**11:11** 36:23
**12:01** 5:9
**13th** 22:18
**14th** 2:10
**17901** 2:16
**18** 27:11
**1835** 2:10
**1900** 2:3
**19103** 2:10

---
**2**
---
**2** 3:3 4:17
**2.1** 35:17
**2:00** 33:6,10,19
**2019** 27:11 28:5
**2020** 1:12 4:17,23
  5:4,9,15,16
  37:15
**2025** 37:22
**215.569.2700** 2:11
**28(D)** 37:14
**2nd** 4:16,25 28:2

---
**3**
---
**3** 1:12 3:4 4:13,23
  5:1,14,19
**30** 37:22
**314.889.7300** 2:4
**3rd** 4:6 5:4 27:9,9
  27:25 37:15

---
**4**
---
**4** 3:3,3,4
**4-** 35:22
**4:00** 30:2
**40** 12:22
**4th** 27:23

---
**5**
---
**5** 5:15,16
**5:00** 30:1
**500** 35:22
**570.622.5933** 2:17
**5th** 5:9

---
**6**
---

**63105** 2:4
**656493** 13:13

---
**7**
---
**7733** 2:3

---
**8**
---

---
**9**
---
**9:30** 24:22 32:23
**92** 4:18
**93441466647**
  13:14