UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLARITY SPORTS
INTERNATIONAL, LLC,

      Plaintiff/Petitioner,

Case No. 2:20-mc-51484
District Judge George Caram Steeh
Magistrate Judge Anthony P. Patti

v.

REDLAND SPORTS, *et al.*,

      Defendants,

v.

KENNETH GOLLADAY,

      Respondent.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PETITIONERS' MOTION FOR CONTEMPT AND SANCTIONS (ECF No. 10)

**A.  Background**

On December 8, 2020, Petitioners Clarity Sports International, LLC and Jason Bernstein (Petitioners) filed an initiating motion pursuant to Fed. R. Civ. P. 45(d)(2)(B)(*i*), to compel non-party Kenneth Golladay's (Respondent's) compliance with a subpoena noticing his deposition and requesting the production of documents related to an underlying action currently pending in the United States District Court for the Middle District of Pennsylvania.  (ECF No. 1.)  Our Court

denied the initiating motion due to ineffective service of the subpoena but granted Petitioners' motion for alternative service (ECF No. 3), allowing service of the subpoena upon Respondent by email. (ECF No. 6, PageID.297-300.)

Petitioners subsequently served the subpoena upon Respondent by email but, receiving no response, filed a second motion to compel compliance on February 12, 2021. (ECF No. 7.) The Court granted that motion on March 19, 2021, ordering Respondent to appear for his re-noticed deposition and produce the documents requested in the subpoena, with a warning that "MR. GOLLADAY'S FAILURE TO COMPLY WITH THIS ORDER MAY RESULT IN SANCTIONS FOR CONTEMPT OF COURT." (ECF No. 9, PageID.441 (capitalization in original).) The Court did not award fees or costs.

**B.     Instant Motion**

The record indicates that Petitioners served the Court's March 19, 2021 order upon Respondent by email (ECF No. 10-3), and re-noticed his deposition for April 13, 2021 (ECF No. 10-2), but received no response, and that Respondent did not attend the April 13 deposition (ECF No. 10-4). As a result, Petitioners filed the instant motion on May 14, 2021, for an order requiring Respondent to show cause why he should not be held in contempt and sanctioned pursuant to Fed. R. Civ. P. 45(g), pay attorney fees and costs associated with the motion and his failure to

appear at the second and third noticed depositions, appear at his rescheduled deposition, and produce the requested documents.  (ECF No. 10.)

Judge Steeh referred the motion to me for a hearing and determination (ECF No. 12), but I first entered an interim order on July 1, 2021, directing Respondent to show cause in writing why he should not be held in contempt and subject to sanctions for failure to comply with the subpoena and subsequent Court order compelling compliance, and directing Petitioners to serve the motion and interim order upon Respondent by email, and upon general counsel for the New York Giants by U.S. mail and either overnight delivery or email.  (ECF No. 13.)[1]  This seems to have finally gotten his attention.  On July 22, 2021, counsel entered an appearance on behalf of Respondent, and the parties filed a stipulation indicating that Respondent would sit for his deposition via Zoom on August 23, 2021, and produce documents responsive to the subpoena.  (ECF No. 16, PageID.492.)  The stipulation further stated:

> The Interim Order, and any required response thereto, shall be stayed until September 2, 2021.  On or before that date, counsel for Petitioners and Respondent shall: (i) have completed Respondent's deposition and any related document production pursuant to the Subpoena; and (ii) jointly report back to this Court that the matters raised in this Miscellaneous Action have been fully resolved or, if

---

[1] Respondent is a member of the New York Giants football team.  *See* nfl.com/players/kenny-golladay/stats/career.  The subpoena was initially served on him while still a member of the Detroit Lions; hence this Court's involvement and jurisdiction.

they have not been so resolved, identify any outstanding issues for this Court to address.

(ECF No. 16, PageID.492.)

On September 2, 2021, Petitioners and Respondent filed the joint status report. (ECF No. 18.) For their part, Petitioners stated that on August 13, 2021, Respondent served responses and objections to the subpoena's document requests, indicating that after conducting a reasonable search, he had no documents responsive to the requests, unilaterally rescheduled his deposition from August 23, 2021 to August 30, 2021, and yet testified at his deposition that neither he nor anyone else had actually searched for responsive emails. (ECF No. 18, PageID.589-590.) Thus, Petitioners assert "that [Respondent] should be held in contempt, should be ordered to fully comply with the Subpoena, and should be required to reimburse Petitioners for the fees they have incurred to secure Respondent's compliance with the Subpoena and the Court's orders." (ECF No. 18, PageID.590.) For his part, Respondent cited his commitments as a professional athlete, his non-party status, as well as his statements at his deposition that he searched for and did not find any emails responsive to the subpoena. (ECF No. 18, PageID.592-595.) Thus, he asserts: "No sanctions should be awarded. No further order should issue compelling [Respondent] to give any additional testimony or search for non-existent and immaterial documents. This action should be dismissed, with prejudice." (ECF No. 18, PageID.595.)

Respondent also filed a response to the instant motion on September 20, 2021, asserting that the Court should neither impose monetary sanctions or contempt, nor order that he engage in any additional discovery efforts. In so doing, he states that: "The only purported 'open issue' is [his] search for, and production of any responsive documents he might have. Although there was some question about this during the deposition, [he], under questioning from opposing counsel, ultimately confirmed that he searched for, and did not locate, any responsive documents." (ECF No. 20, PageID.637.)[2]

In their September 24, 2021 reply brief, Petitioners argue that Respondent: (1) was properly served with the subpoena; (2) ignored the subpoena and the Court's order compelling his compliance until the eve of the Court's interim show cause order; and (3) failed to conduct a reasonable search for the documents requested in the subpoena. (ECF No. 21, PageID.987-992.) As such, they assert the Court should order a forensic examination of his email accounts and devices, and that Respondent pay their "fees and expenses for [their] counsel alone to secure [his] compliance with basic discovery obligations [which] have already amounted to approximately $15,000." (ECF No. 21, PageID.992.)

---

[2] Respondent also spends several pages of his brief challenging service of the subpoena under Fed. R. Civ. P. 45 (ECF No. 20, PageID.643-648), which will be addressed below.

On September 28, 2021, the Court held a hearing on the instant motion, and took the matter under advisement.

### C. Standards

#### 1. Fed. R. Civ. P. 45(g)

Fed. R. Civ. P. 45 governs subpoenas issued to non-parties, like Respondent. Under Fed. R. Civ. P. 45(g), "[t]he court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." Fed. R. Civ. P. 45(g).[3]

Whether to hold a party in contempt is within the sound discretion of the district court, but the contempt power "should not be used lightly." *Elec. Workers Pension Trust Fund of Local Union 58, IBEW v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 378 (6th Cir. 2003). A person may be held in contempt if it is shown "by clear and convincing evidence that he violate[d] a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d

---

[3] *See also* Fed. R. Civ. P. 30(d)(2) ("The court may impose an appropriate sanction -- including the reasonable expenses and attorney's fees incurred by any party -- on a person who impedes, delays, or frustrates the fair examination of the deponent."); Fed. R. Civ. P. 37(b)(1) ("If the court where the discovery is taken orders a deponent to be sworn or to answer a question and the deponent fails to obey, the failure may be treated as contempt of court.").

585, 591 (6th Cir. 1987) (citation and quotations omitted). "With respect to civil contempt proceedings, '[j]udicial sanctions . . . may, in a proper case, be employed for either or both of two purposes; to coerce the [individual] into compliance with the court's order, and to compensate the complainant for losses sustained.'" *Gary's Elec. Serv. Co.*, 340 F.3d at 379 (quoting *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947)).

### 2. Magistrate Judge's Contempt and Sanction Powers

Except where a United States Magistrate Judge exercises consent jurisdiction in a civil case under 28 U.S.C. § 636(c) or misdemeanor jurisdiction under 18 U.S.C. § 3401, the Magistrate Judge may not enter an order of civil contempt for acts occurring outside the Magistrate Judge's presence. 28 U.S.C. § 636(e)(4). Instead, the Magistrate Judge must proceed under 28 U.S.C. § 636(e)(6)(B) which provides, in pertinent part, as follows:

> [T]he magistrate judge shall forthwith certify the facts to a district judge and may serve or cause to be served, upon any person whose behavior is brought into question under this paragraph, an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified. The district judge shall thereupon hear the evidence as to the act or conduct complained of and, if it is such as to warrant punishment, punish such person in the same manner and to the same extent as for a contempt committed before a district judge.

However, Magistrate Judges have authority to sanction people for the violation of discovery orders, without a finding of contempt, under Fed. R. Civ. 37(b). *See*

Fed. R. Civ. P. 37(b)(2); *Clark Constr. Group, Inc. v. City of Memphis*, 229 F.R.D. 131, 137-138 (W.D. Tenn. 2005).

    **D.    Analysis**

For the reasons that follow, Petitioners' motion is **DENIED** as to contempt and **GRANTED IN PART** as to sanctions. (ECF No. 10.)

    **1.    Service**

Initially, the Court rejects Respondent's argument that the subject subpoena was never properly served in accordance with Fed. R. Civ. P. 45. (ECF No. 20, PageID.643-648.) That ship has sailed. The Court entered an order for alternative service, allowing service by email (ECF No. 6); but more importantly, Respondent does not deny actually receiving the subpoena, and Respondent's counsel appeared to abandon any service argument at the hearing.

    **2.    Contempt**

Due to the nature of the subject subpoena, which requested both his deposition and the production of certain emails and text messages (ECF No. 7-1, ECF No. 20-4), the Court will consider whether to hold Respondent in contempt with regard to each separately.

    **a.    Deposition**

First, although the Court finds that Respondent could and should have appeared for his deposition without the Court's order compelling him to do so

8

(ECF No. 9) or the need to file the instant motion, and that Respondent provided no adequate excuse for his failure to do so, the Court declines to hold Respondent in contempt with regard to the deposition portion of the subpoena and order to compel.  In so doing, the Court recognizes the severity of a contempt finding, especially for a non-party like Respondent, as well as the primary purpose of contempt—to coerce compliance with a court order, *Gary's Elec. Serv. Co.*, 340 F.3d at 379.  As Respondent sat for his deposition via Zoom on August 30, 2021 (ECF No. 20-2), and Petitioners have raised no argument regarding the deposition itself or the need for additional questioning, either in their briefing or at the hearing, the Court **DENIES** Petitioners' request to hold Respondent in contempt with regard to his deposition appearance.  The mission to have Petitioner sit for a deposition has been accomplished.

### b. Production of Documents

Indeed, as Petitioners' counsel confirmed at the hearing, the only outstanding issue regarding Respondent's compliance with the subpoena concerns his production of responsive emails.[4]  Petitioners assert the existence of clear and convincing evidence that Respondent should be held in contempt for failure to comply with the subpoena and ordered to produce certain emails.  (*See* ECF Nos.

---

[4] The text messages requested are not at issue. (*See* Hearing Trans., ECF No. 22, PageID.1044-1045.)

7-1, 9, 20-4.) In so doing, they argue that Respondent's initial deposition testimony that he did not search for the requested documents calls into question his later testimony ambiguously implying that he did conduct such a search, but found no responsive documents. (ECF No. 18, PageID.588-590; ECF No. 21, PageID.989-992.) Specifically, Petitioners quote the following deposition exchanges:

> Q. Did you or did anybody else look at your email to see if there were emails there in response to the subpoena?
>
> A. No.
>
> Q. No one checked?
>
> A. No, I don't have anyone check my email for me.
>
> Q. I just want to make sure that I understand what you're saying. After you were served with the subpoena in January of 2021 you didn't check your email accounts to see if there any were [sic] any emails there and nobody else checked your email accounts as far as you know. Do I have that right?
>
> A. Yes.
>
> * * *
>
> Q. Did you check your email account for communications between you and Todd France?
>
> A. I didn't have any.
>
> Q. But did you check?
>
> A. If I didn't have any then I checked. I don't have any

>    Q. When did you check?
>
>    A. I don't remember. I don't have any.

(ECF No. 21, PageID.990-991 (quoting ECF No. 20-2, PageID.674, 812).) Further, they note the existence of a responsive email produced through other sources of discovery, despite Plaintiff's insistence that he does not have responsive emails. (ECF No. 18, PageID.590; ECF No. 20-2, PageID.750-752; Hearing Trans., ECF No. 22, PageID.1066-1067.)

In response, Respondent argues that he ultimately confirmed at the deposition that he searched for and did not locate responsive documents, and "[w]hile his deposition testimony on this point could have been clearer, any ambiguity rests with [Petitioners'] counsel who chose not to explore [Respondent's] search (clearly he preferred the ambiguity)." (ECF No. 20, PageID.637.) Further, he states:

> [He] testified that he rarely (if ever) uses email or even checks it. As far as text messages, [he] testified that he has gone through numerous phones over the last several years since the events at issue and that he does not back his data up to the "cloud" . . . .

(ECF No. 20, PageID.650.)

In the joint statement, Respondent cites to exchanges during his deposition in which he is asked about specific document requests and denies having such documents after searching for them. (ECF No. 18, PageID.593-594 (citing ECF

11

No. 20-2, PageID.811-819).)  As an example, the following exchange occurred at Petitioner's deposition:

> Q. So this subpoena was served on you, Mr. Golladay, and it asked for you to produce documents.  Do you understand that?
>
> A. Okay.
>
> Q. Number 1 is it asked for each and every communication between you and Jake Silver.  The documents are emails, text messages, direct messages, anything in written format.  And what I understand you told me earlier was that you didn't look at your email account to see if you had emails with Jake Silver, correct?
>
> A. No.
>
> Q. Am I right about that?
>
> A. I didn't have anything.  I didn't have any emails.  I didn't have any text messages.  I didn't have anything.
>
> Q. So what I understood you telling me earlier is you didn't look because you don't look at your email account, right?
>
> A. I checked my email and I didn't have anything from Jake Silver, didn't have any text messages from Jake Silver.
>
> Q. Did you check your -- so number 2 is each and every communication between you and Todd France.
>
> Did you check your email account for communications between you and Todd France?
>
> A. I didn't have any.
>
> Q. But did you check?
>
> A. If I didn't have any then I checked.  I don't have any.

> Q. When did you check?
>
> A. I don't remember. I don't have any.
>
> Q. So what I understood you told me earlier was that you didn't look at your email account. Are you telling me something different now?
>
> A. I checked. I don't have any. I don't have any emails from Jake Silver texting me, and I don't have emails from Todd France.

(ECF No. 20-2, PageID.811-812.)

Upon review of the deposition testimony and other record evidence, as well as the briefing and arguments presented at the motion hearing, the Court **DENIES** Petitioners' request to hold Respondent in contempt with regard to the production of documents, or to order any forensic examination of Respondent's email accounts. While the Court finds that Respondent's answers to the deposition questions regarding his search for responsive emails were evasive, they do not serve as clear and convincing evidence that Respondent violated the subpoena's request for documents or the Court's order compelling compliance with the subpoena. *Cincinnati Bronze, Inc.*, 829 F.2d 585 at 591. Although Respondent initially testified that neither he nor anyone else searched for responsive emails (ECF No. 20-2, PageID.674), he later testified, in response to questions regarding specific document requests, that he searched for and found no responsive emails or text messages (ECF No. 20-2, PageID.752, 811-819). And that testimony is consistent with his August 13, 2021 discovery responses, in which he states that

after conducting a reasonable search, he has no documents responsive to the requests. (ECF No. 21-3, PageID.1007-1009.)[5]

Moreover, Petitioners' counsel had every opportunity to ask more specific follow-up questions to clarify the inconsistencies in Respondent's testimony, including how he searched for his email, whether he conducted the search personally or with assistance, when or within what time range, on what device, what methods or search terms were used, which accounts were searched, what his settings were, how often his deleted emails are emptied, what forms of electronic storage he has, what types of hardware he uses, whether he knows how to use a search function, etc., but failed to do so. (*See* ECF No. 22, PageID.1034-35, 1054.) And Petitioners' counsel closed the deposition, with no statement that Respondent remained under subpoena due to lack of production, and without reserving the right to continue the deposition or deal with document production separately. (*See* ECF No. 20-2, PageID.847-848.) It does appear that Petitioner was satisfied with the ambiguity (*see* ECF No. 20, PageID.637; ECF No. 22, PageID.1053), at least at the time.

---

[5] The Court also notes that Todd France, Respondent's current agent, apparently was successful in arbitration that occurred prior to the filing of the underlying litigation (*See* Hearing Trans., ECF No. 22, PageID.1042, 1049; ECF No. 20, PageID.640), and that this weighs against unnecessarily burdening non-party Respondent here.

14

Nevertheless, the Court is cognizant of the fact that Respondent's actions—ignoring the subpoena as well as the Court's March 2020 order compelling his compliance (ECF No. 9)—necessitated two of Petitioners' motions in this case, and finds that Petitioners deserve compensation for those efforts. Federal courts possess the "inherent power to protect the orderly administration of justice and to maintain the authority and dignity of the court," *Mitan v. Int'l Fid. Ins. Co.*, 23 F. App'x 292, 298 (6th Cir. 2001), and those powers include both punishment by contempt and the assessment of attorney fees, *Goodyear Tire & Rubber Co. v. Haeger*, ___ U.S. ___, ___; 137 S.Ct. 1178, 1186 (2017) ("[S]uch a sanction, when imposed pursuant to civil procedures, must be compensatory rather than punitive in nature. In other words, the fee award may go no further than to redress the wronged party for losses sustained; it may not impose an additional amount as punishment for the sanctioned party's misbehavior.") (internal citations and quotation marks omitted). Specifically, a district court "has the inherent power to sanction a party when that party exhibits bad faith, including the party's refusal to comply with the court's orders." *Youn v. Track, Ins.*, 324 F.3d 409, 420 (6th Cir. 2003).

"[A] court's reliance upon its inherent authority to sanction derives from its equitable power to control the litigants before it and to guarantee the integrity of the court and its proceedings." *First Bank of Marietta v. Hartford Underwriters*

15

*Ins. Co.*, 307 F.3d 501, 512 (6th Cir. 2002). "Even if there were available sanctions under statutes or various rules in the Federal Rules of Civil Procedure . . . the inherent authority of the Court is an independent basis for sanctioning bad faith conduct in litigation." *Id*. At 511. To impose sanctions pursuant to its inherent authority, a district court must find that the individual: (1) engaged in conduct that hampered the enforcement of a court order; and (2) acted in bad faith. *Williamson v. Recovery Ltd. Partnership*, 826 F.3d 297, 302 (6th Cir. 2016). The Court finds both here.

First, it is clear that Respondent's actions hampered the enforcement of a court order. Although initially, service of the subpoena upon Respondent was called into question, Respondent ignored the subpoena, as well as the Court's order compelling his compliance (ECF No. 9), after effective service of both by Court-ordered alternative means. And neither Respondent's assertions that he rarely, if ever, uses email (ECF No. 20, PageID.638), nor his rigorous schedule during training camp, excuse his neglect. Professional football players are not above the law. The Court chose the email addresses it did for alternative service based upon representations that Respondent had used them to communicate with Clarity and with one of the Defendants in the underlying case (ECF No. 6, PageID.300) – as confirmed by party document production within the Pennsylvania case (ECF No. 22, PageID.1066-1067) – and had Respondent acknowledged the subpoena or the

16

Court's order compelling his compliance when served during the offseason, there would have been no conflict with training camp.

Second, Respondent's behavior, both in ignoring the subpoena and Court's order (ECF No. 9), and leading up to and during his deposition, demonstrates that he hampered the Court proceedings in bad faith. It was not until service was made upon general counsel for the New York Giants that Respondent retained counsel and responded to the subpoena and instant motion, and he displayed no regard for Petitioners' time or the Court's orders when he appeared late for his deposition to get a massage. (ECF No. 20-2, PageID.668-669.) His cavalier and reckless attitude toward the proceedings is further reflected in his evasive answers to questioning at his deposition regarding his document production. *See Diamond Consortium, Inc. v. Hammervold*, 386 F.Supp.3d 904, 914-917 (M.D. Tenn. 2019) (using inherent powers to award fees and costs in lieu of contempt). In the end, Respondent's avoidance of testimony caused plenty of expense and inconvenience. He gave Petitioners' counsel the "run-around," displayed a cavalier attitude towards his obligation to testify and abide by Court orders, and then ultimately testified in a manner which left the question of his document production compliance ambiguous, if not clearly and convincingly contemptuous. On the other hand, Petitioners squandered the opportunity to make a clearer record

regarding the document search at issue here, and consequently the Court will not require further effort or involvement in discovery by this non-party.

The Court also notes that Respondent's counsel did not vigorously contest the imposition of fees and costs at the hearing.  In response to the Court asking whether Respondent should bear some of the expense for enforcement of the subpoena, counsel stated: "So, Your Honor, I -- I'm not going to argue against your point because I understand it well.  I would just ask that in considering that question you consider the totality of the circumstances."  (Hearing Transcript, ECF No. 22, PageID.1063-1064.)  Indeed, the Court has considered the totality of the circumstances, which inform its conclusions.

Accordingly, the Court **GRANTS** the instant motion (ECF No. 10) insofar as Petitioners request attorney fees and costs related to their efforts to secure Respondent's compliance with the subpoena.  On or before **Monday, November 8, 2021**, Petitioners may submit a sworn bill of fees and costs incurred in drafting their second motion to compel compliance with the subpoena (ECF No. 7), drafting the instant motion (ECF No. 10) and related briefing, and arguing the instant motion at the September 28, 2021 hearing, as well as documentation in support of their fee request, for the Court's review.  Respondent must then file a

response by **Monday, November 22, 2021**, unless the parties are able to agree to a reasonable amount without the Court's further intervention.[6]

**IT IS SO ORDERED.**

Dated: October 25, 2021

                                      Anthony P. Patti
                                      UNITED STATES MAGISTRATE JUDGE

---

[6] The attention of the parties is drawn to Fed. R. Civ. P. 72(a), which provides a period of fourteen (14) days after being served with a copy of this order within which to file objections for consideration by the district judge under 28 U.S.C. § 636(b)(1).